UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DINA PARTIN,

    **Plaintiff,**

v.                                      CASE NO.:_____

AMTEC LESS LETHAL
SYSTEMS, INC,

    **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, DINA PARTIN, by and through the undersigned attorneys of record, and files this Complaint and Demand for Jury Trial against Defendants, AMTEC LESS LETHAL SYSTEMS, INC., and alleges:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (diversity jurisdiction) as it is between citizens of different states and the amount in controversy is greater than $75,000 exclusive of interest, costs and attorneys' fees.

2. Plaintiff, DINA PARTIN (herein after "Ms. Partin"), is a citizen of the State of Florida.

3. Defendant, AMTEC LESS LETHAL SYSTEMS, INC. (herein after

"AMTEC" or "Defendant"), is a corporation incorporated under the laws of Wisconsin with its principal place of business in Virginia.

4. Venue is proper in this Court because the events forming the basis for this cause of action occurred in Taylor County, Florida.

## Factual Allegations

5. Plaintiff was hired by Defendant in March 2017 as a Production Manager at their manufacturing plant located in Perry, Florida. Plaintiff was a hard-working and productive employee for the company who routinely received praise for her work and high-performance reviews.

6. Defendant is an ammunition manufacturer who manufactures items for law enforcement agencies and militaries, including rubber bullets, bean bag munitions, smoke grenades, stun grenades, door breaching grenades, and similar products. Defendant is subject to the rules and regulations promulgated by the Occupational Safety and Health Administration ("OSHA"), related to providing safe and healthy workplaces for employees.

7. In or around 2013 another Production Manager of Defendant, John Hunt, attended a safety demonstration of a blast booth specifically designed for Defendant in their workplace. Employees handling explosive substances work inside the blast booths, which are designed to protect individuals in close proximity to the employee handling the explosive substances inside the blast booth.

8. As part of this safety demonstration, varying quantities of explosive substances were placed inside the blast booth used by Defendant to demonstrate the limitations of the blast booth and its ability to protect individuals working in close proximity to the blast booth. During this demonstration, 50g of a specific explosive flash powder used by Defendant in the manufacturing of certain products ("flash powder") was placed inside the blast booth and set off, resulting in no damage to the blast booth or external damage occurring outside of the booth. A greater amount of flash powder was then placed inside the booth and set off, resulting in the Lexan safety shielding detaching from the steel frame of the booth and exposing the surrounding area to the explosion.

9. The results of this demonstration are memorialized in a memorandum in the possession of Defendant, submitted by the engineer who designed and tested the blast booths used by Defendant. In this memorandum, Defendant was warned of the amount of flash powder that could safely be inside a blast booth at any given time.

10. At all relevant times, Defendant was aware of the amount of flash powder that could be safely within a blast booth in order to contain an explosion and protect individuals working in close proximity to the blast booth. Defendant was aware of these limitations through OSHA, the memorandum discussing in

detail the limitations of the blast booths, and from generally accepted industry standards.

11. On September 10, 2018, Defendant issued Working Instructions instructing employees handling and producing explosive products in the blast booths that they could safely bring 550g of flash powder into the booths; over ten times the safe limit of flash powder to bring inside the booths.

12. Other Working Instructions, going back to at least 2017, advised employees that they could safely bring 2000g of flash powder into the blast booths. These instructions were given to expedite the manufacturing process in order to meet production goals and fulfill work orders. Working Instructions permitting more than the safe limit of flash powder to bring inside the blast booths remained in place despite prior warnings to Defendant that the amount was well in excess of the safe limits for the booths.

13. On September 14, 2018, four days after the Working Instructions permitting 550g of flash powder inside the blast booths were issued, an explosion occurred at Defendant's plant caused by flash powder which was contained inside a blast booth. Due to the Working Instructions issued by Defendant instructing their employees to handle an amount of flash powder more than ten times greater than the known safety limits for the blast booths, this explosion was not contained by the blast booth and instead extended out into the building and surrounding area.

14. The September 14, 2018 explosion occurred in the building where Plaintiff worked and resulted in the deaths of two of her co-workers and close personal friends. Upon the explosion occurring, Plaintiff, who was directly outside the building, rushed into the building, inhaling smoke and fighting through debris, before arriving at the body of one of her close friends and co-worker. Plaintiff, along with a Quality Engineer for Defendant at the time, Vernon Wakefield, dragged her friend out of the damaged building and attempted to limit his bleeding until first responders arrived. Plaintiff remained with her two dying friends until first responders arrived.

15. Shortly after the catastrophic events that occurred on September 14, 2018, Plaintiff began suffering from severe emotional distress and trauma resulting in, amongst other physical issues, headaches, panic attacks, a loss of appetite, and an inability to sleep. Plaintiff was diagnosed with post-traumatic stress disorder, depression, and anxiety. Plaintiff is presently receiving treatment for her psychological trauma and the accompanying physical symptoms and will be for the foreseeable future.

16. In addition to the negligent and/or intentional and reckless actions described above, and during the same relevant times for purposes of this action, Defendant also engaged in the following negligent and/or intentional and reckless actions:

    a.    Failed to maintain design basis or engineering specifications for the panels installed on the blast booths;

    b.    Failed to document or maintain a written description and engineer design information for the blast booth workstation's dust collection and ventilation system;

    c.    Failed to ensure that the Process Hazard Analysis methodology addressed the requirements under 29 CFR 1910.119(e)(3);

    d.    Failed to train employees before being involved in an operating process which exposed them to explosive hazards;

    e.    Failed to conduct or document any Process Safety Management compliance audits in accordance with 29 CFR 1910.119(o)(1); and

    f.    Exposed employees to hazards as a result of the blast booth not being capable of withstanding blast overpressure.

### **COUNT I: Negligent Infliction of Emotional Distress**

17.    Plaintiff realleges the allegations of paragraphs 1-16 above and incorporates them herein by reference.

18.    At all relevant times, Defendant owed Plaintiff a duty to act with reasonable care, and/or the injury to the Plaintiff was reasonably foreseeable.

19. At all relevant times, Defendant had the power, ability, authority and duty to stop engaging in the conduct described herein and to intervene to prevent or prohibit such conduct.

20. At all relevant times, Defendant knew, or reasonably should have known, that the conduct described herein would and did proximately result in Plaintiffs' physical symptoms and emotional distress.

21. Despite said knowledge, power, and duty, Defendant negligently failed to stop engaging in the conduct described herein or to prevent or to prohibit such conduct or otherwise to protect Plaintiff, thereby breaching their duty to her.

22. As a result of Defendant's actions and inactions, Plaintiff observed and witnessed the death of two co-workers and friends with whom she shared a close personal relationship as described herein. Moreover, outside forces and substances touched Plaintiff and/or entered her body during the event that resulted in the death of her two co-workers and friends.

23. As a direct and legal result of Defendant's actions and inactions, Plaintiff has suffered and will continue to suffer significant physical symptoms, pain and suffering, and extreme and severe mental anguish and emotional distress.

24. Defendant's conduct constitutes the negligent infliction of emotional distress and is actionable under the laws of the State of Florida. Plaintiff is entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## COUNT II: Intentional Infliction of Emotional Distress

25. Plaintiff realleges the allegations of paragraphs 1-24 above and incorporates them herein by reference.

26. Defendant's conduct described herein was outrageous, willful, reckless, and/or intentional.

27. Defendant intended to cause Plaintiff to suffer emotional distress and the accompanying physical symptoms.

28. Plaintiff suffered severe emotional distress and the outrageous, reckless, willful, and/or intentional conduct of Defendant was the cause of the emotional distress and the accompanying physical symptoms suffered by Plaintiff.

29. Defendant's outrageous, reckless, and/or intentional conduct constitutes intentional infliction of emotional distress and is actionable under the laws of the State of Florida. Plaintiff is entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff demands a trial by jury on all issues herein that are so triable and demands judgment against Defendant for the following:

(a) that process be issued, and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, and any other equitable relief

available to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general, compensatory damages, punitive damages and economic loss to Plaintiff from Defendant's violations of law and conduct enumerated herein;

(d) enter judgment against Defendant and award Plaintiff attorney's fees and costs;

(e) award Plaintiff interest where appropriate; and

(f) grant such other further relief as being just and proper under the circumstances.

Respectfully submitted this 5th day of February 2020.

*/s/ Matthew D. MacNamara*
Matthew D. MacNamara (FL Bar No. 113002)
matt@scottandwallacelaw.com
Robert M. Scott (FL Bar No. 57149)
rscott@scottandwallacelaw.com
J. Clint Wallace (FL Bar No. 59590)
cwallace@scottandwallacelaw.com
SCOTT & WALLACE LLP
209 E. Brevard St.
Tallahassee, Florida 32301
Telephone:  (850) 222-7777
Facsimile:  (850) 222-7778
Attorneys for Plaintiff